UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D.W. by her next friend
TONITA WHITE CROSBY, *et. al.*,

    Plaintiffs,

vs.

Case No. 13-12415
HON. GERSHWIN A. DRAIN

BLANCHE KELSO BRUCE
ACADEMY, *et. al.*,

    Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND JOIN PARTIES [#24]**

## I. INTRODUCTION

Before the Court is Plaintiffs' Motion for Leave to Amend Complaint and Join Parties [#24], filed on September 24, 2013. Defendants, Blanche Kelso Bruce Academy ("BKBA"), Detroit Public Schools ("DPS"), Wayne County Regional Educational Service Agency ("Wayne RESA"), Evans Solutions ("Evans"), Christopher Wigent ("Wigent"), Blair Evans ("Mr. Evans"), and Roy Roberts ("Roberts") filed Responses to Plaintiffs' Motion. Plaintiffs have not filed a reply as of the issuing of this opinion.

## II. FACTUAL BACKGROUND

CFA is a Detroit, Michigan school that educates pregnant and parenting teens. While attending CFA is not required for students who become pregnant during their high school years, it uniquely provides an opportunity for pregnant and parenting mothers to still receive an education while having onsite care for their children. For over two decades, CFA

provided traditional, comprehensive high school curriculum that met state and federal requirements in addition to offering childcare, early child education programs, and prenatal, postnatal, and pediatric health care. CFA has historically had a graduation rate of 90%, with 100% of its graduates accepted to community colleges or universities and equipped with financial aid packets. Outside of CFA, DPS does not provide any other support or assistance programs for pregnant and parenting teens. Plaintiffs' Amended Complaint indicates that many of the women who attend CFA state that they were forced to leave DPS by DPS school officials who told the students the school could not guarantee their public safety in their pregnant conditions.

In the spring of 2011 Robert Bobb ("Bobb"), the then Emergency Financial Manager of DPS, announced that the district could no longer support CFA. Plaintiffs argue that Bobb's claim was false because the state and federal funding that CFA received allowed the school to be nearly self-sustaining. Additionally, Plaintiffs argue that Bobb's statement was a pretext to discriminate against the young pregnant and parenting mothers. In response to Bobb's announcement, CFA students joined the civil rights organization BAMN[1].

In June 2011 Bobb's successor Roberts, transferred CFA to BKBA, a strict discipline public charter school authorized by Wayne RESA and managed by Evans. Roberts executed an Order[2] which established an agreement with BKBA that BKBA would "continue

---

[1] BAMN is also known as "The Coalition to Defend Affirmative Action, Integration, Immigrant Rights, and Fight for Equality By Any Means Necessary."

[2] Order to Enter into an Agreement with Blanche Kelso Bruce Academy to Continue Educational Program as Previously Provided by the Catherine Ferguson Academy

the provision of educational services as previously provided" by supporting the "continuation of the existing CFA Program by continuing the same structure of core academics and application to farm and food."

At the beginning of the 2012-2013 school year, the educational environment at CFA drastically changed. Many state mandated courses were terminated, and rather than attend classes, the students were place on an independent study program.[3] Rather than instructing classes, teachers became advisors and met with each student for 15 to 30 minutes a week to discuss their independent work and answer any questions the students might have. Additionally, BKBA chose not to employ certified teachers in several core subjects such as physical education, foreign language, and math. Without teachers, students were unable to receive credits required by the Michigan Merit Curriculum for high school graduation. Parenting and life skills classes and the farm and livestock program were also eliminated. CFA did adopt a required internship program, however, the students were required to find their own internships and transportation.[4] On a disciplinary level, BKBA failed to institute a student code of conduct at CFA, which caused punishments to be carried out in an arbitrary manner. In light of these educational losses, CFA continued to receive an average of $7,500 per student in federal and state funding.

Once CFA was taken over by BKBA the school was listed as a strict disciplinary academy for students with serious criminal and discipline problems. The students were

---

[3] Students were given a packet at the beginning of the semester and were expected to independently work on their packets or other self-chosen and self-directed projects throughout the day.

[4] Transportation was particularly difficult for Plaintiff students who had to first travel to CFA before their internship for the free childcare offered at CFA.

required to get a Juvenile Court referral because of their listing under BKBA, a requirement which only added additional stigma to young women who were already being stigmatized because of their pregnant or parenting state. This classification and the Juvenile Court requirement damaged the students permanent records, their self esteem, and their hopes for the future. By the end of the 2012-2013 school year, 100 of the 200 students initially enrolled at CFA had dropped out and only 50 of the remaining 100 were regularly attending classes.

The students were not the only ones impacted by the changes that occurred at CFA. Plaintiff and former CFA teacher Nicole Conoway ("Conoway") was instructed by BKBA to stop teaching classes and content mandated by the Michigan Merit standard. Conoway spoke out in staff meetings that the elimination of classes was unfair to the students and that the new advisory role of the teachers was not satisfactory, publically argued at board meetings against the education being offered at CFA, and organized a meeting of CFA teachers without the administration present. In retaliation Conoway was not included in staff meetings and was told, along with all the other CFA teachers, that she could leave if she was not on board with CFA's new program. Additionally, Conoway was denied being returned to her job for the following school year.

On July 31, 2013, teacher and student protests lead Wayne RESA to remove CFA from the BKBA district and make CFA an independent charter school. Today, Evans, the manager of BKBA, also manages CFA. Mr. Evans is the CEO of Evans, Inc. and is responsible for the daily operation of the school. Today at CFA, there are still no classes offered in physical education, health, parenting and skills, music or other electives, no code of conduct, and not a single teacher from the 2012-2013 school year was rehired for the

2013-2014 year. CFA still requires that their students participate in an internship, however staff now secures the positions for the students. Plaintiffs indicate that many of the students do not want an internship, but are forced to accept the only nine hours of classroom instruction offered to them. In contrast, internships are optional in DPS and usually only offered to students who have completed their formal academic requirements.

Plaintiffs assert that the Defendants have caused and continue to cause irreparable harm to the educational opportunity of the Plaintiff students.

## IV. LEGAL ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 15 governs motions to amend pleadings. Under Fed. R. Civ. P. 15(a)(2), if the amended pleading was not filed within 21 days after service of the original pleading, a party may only amend its pleading if it receives "the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). However, a motion to amend a complaint should be denied "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995). A motion to amend a pleading is futile when the proposed amended pleading would not survive a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted."[5] *Miller v. Calhoun County,* 408 F.3d 803,

---

[5] Under Fed. R. Civ. P. 12(b)(6), a "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570 (2007). Conclusory statements are not enough.

817 (6th Cir. 2005). Plaintiffs argue that the facts of the case have changed in several key aspects which are directly relevant to the allegations and relief requested in the pleading. If true, justice requires that leave be granted to file Plaintiffs' First Amended Complaint. Fed. R. Civ. P. 20(a)(2) permits persons to be joined in an action as defendants if:

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

### B.    Joined Defendants

Here, there is no question that the proposed Defendants to be joined include the additional persons and entities responsible for the educational institution at issue in this matter, therefore joinder of the defendants is permissible under Fed. R. Civ. P. 20(a)(2). However, BKBA argues that Plaintiffs have improperly sought to add Marshall and Bastianelli as defendants under the claim that the parties are CFA board members. BKBA asserts this information is inaccurate as the CFA board consists of three members: Dr. Emma Epps, Dr. Chanel DeGuzman, and Cherry Sparks.  Plaintiffs have not issued a Reply brief to provide any counter-argument to BKBA's arguments.

### C.    Title IX Claims

In Plaintiffs' Proposed Amended Complaint they argue numerous Defendants acted in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX"). Plaintiffs allege they have stated viable Title IX claims against DPS, BKBA, Wayne RESA, CFA, Evans, CFA Board, Mr. Evans, Martin, and Wigent. Title IX states:

> (a) No person in the United States shall, on the basis of sex, be excluded from participation, be denied the benefits of, or be subject to discrimination under any education program or activity receiving Federal financial assistance...

     *        *        *

> (c) For purposes of this chapter an educational institution means any public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college or department which are administratively separate units, such term means each such school, college, or department.

Defendants argue that Plaintiffs' Title IX claims against CFA's board members, Mr. Evans, Martin, and Wigent are invalid because such claims cannot be brought against individuals. Caselaw has established that: "Title IX reaches institutions and programs that receive federal funds, 20 U.S.C. § 1681(a), which may include nonpublic institutions, § 1681(c), but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals. *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009) (citing *Hartley v. Parnell*, 193 F.3d 1263, 1270 (11th Cir. 1999)). In Plaintiffs' Proposed Amended Complaint, the only allegations asserted against the aforementioned individuals are for actions undertaken in their official capacities. Title IX claims can only proceed against the fund recipient and not the individual school officials. *Sopper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999). Therefore, Plaintiffs' Motion is denied with respect to their request to add Epps, DeGuzman, Sparks, Evans, Martin, and Wigent.

  Additionally, the Court should consider whether or not DPS is an "appropriate person" under 20 U.S.C § 1682[6], with authority to take corrective action to end the alleged

---

[6] Under 20 U.S.C § 1682:

> Each Federal department and agency which is empowered to extend Federal financial assistance to any education program or activity, by way of grant, loan, or contract...is authorized and directed to effectuate the provisions of section 1681...by issuing rules, regulations, or orders of general applicability which shall be consistent with achievement of the objectives of the statute authorizing the financial assistance in connection

discrimination within the School District or the institution responsible for providing the educational opportunities to Plaintiffs during the relevant time frame. Title IX deals with three specific types of discrimination: (1) discrimination in admission to an institution, (2) discrimination of available services or studies within an institution once students are admitted, and (3) discrimination in employment within an institution. *N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 526 (1982).[7] DPS argues that merely having an affiliation with a federally-funded educational institution, such as Wayne RESA and BKBA, that are solely responsible for providing the educational opportunities at issue, is not enough to impose Title IX liability on DPS.[8] In their Proposed Pleading, Plaintiffs admit that "Wayne County RESA, the charter authorizing agency of BKBA, is legally responsible for securing a specific and enforceable contract with BKBA for CFA, which includes proper placement of these pregnant and parenting teens as girls and young women with equal rights." Additionally, the Memorandum of Agreement ("MOA") entered into between DPS and BKBA on August 23, 2011 dictated the continued operation of CFA to BKBA and specifically states that DPS will provide no funds for the education of students attending BKBA and that each party is solely responsible for their own conduct.

---

with which the action is taken....no such action shall be taken until the department or agency concerned has advised the **appropriate person or persons** of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means. (emphasis added)

[7] *N. Haven*, 456 U.,S. at 526, discussed and set out the legislative history of Title IX, including an analysis of the different types of Title IX discrimination by Senator Bayh.

[8] DPS argues this same analysis should apply to dismissing them from any liability under Plaintiffs' ELCRA claims as well.

Plaintiff should be permitted to bring claims of violation of Title IX against BKBA, Wayne RESA, CFA, and Evans. Multiple Defendants argue that Plaintiffs Title IX claims are invalid because the Plaintiff students attended CFA by choice and were not denied or excluded from any opportunity on the basis of their sex. Rather, Defendants argue that each Plaintiff had an equal opportunity, access, and ability to receive their education from DPS if they so desired. However, the Court must accept all factual content in a pleading as true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007), and Plaintiffs Amended Pleading states that although the young women who attended CFA did so voluntarily, many reported that they were forced by DPS school officials to leave their former high schools because the school principal or counselor told Plaintiffs that the school could not guarantee their public safety in their pregnant condition. Additionally, DPS provides no services for pregnant or parenting students. Many parenting students are forced to drop out of high school because they are unable to find affordable childcare or because they can no longer emotionally handle the stigmatization that comes with being a pregnant teen or young mom. CFA uniquely provides prenatal care, child care, parenting classes, and a supportive environment of similarly situated classmates.

Furthermore, 34 C.F.A § 1063.40 states:

(a) Status generally. A recipient [of Federal Financial Assistance] shall not apply any rule concerning a student's actual or potential parental, family, or marital status which treats students differently on the basis of sex.
(b) Pregnancy and related conditions.
    (1) A recipient shall not discriminate against any student, or exclude any student from its education program or activity, including any class or extracurricular activity, on the basis of such student's pregnancy, childbirth, false pregnancy, termination of pregnancy or recovery therefrom, unless the student requests voluntarily to participate in a separate portion of the program or activity of the recipient.
    \*        \*        \*

> (3) A recipient which operates a portion of its education program or activity separately for pregnant students, admittance to which is completely voluntary on the part of the student as provided in paragraph (b)(1) of this section shall ensure that the separate portion is **comparable to that offered to non-pregnant students**. (emphasis added)

Plaintiffs' Complaint clearly establishes that the education being offered to the pregnant and parenting young women at CFA was, and continues to be, inferior to the education Plaintiffs male and non-pregnant female counterparts are receiving at DPS. Not only did CFA fail to meet federal and state curriculum requirements, but it failed to provide its students with the basic classes necessary to graduate from high school. A school once commended for its success in assisting one of the most vulnerable segments of the teenage population became a shell of an education program with no teachers, no classes, and barely any students. BKBA, Wayne RESA, CFA, and Evans Inc. all played a role in the deterioration of CFA and its transformation to an entity that discriminated against the young women it purported to help. Regardless of whether or not Plaintiffs had the opportunity to attend DPS instead of CFA, under 34 C.F.A § 1063.40, Defendants are obligated to provide an education program comparable to that offered to the non-pregnant/parenting students at DPS.

### D. Michigan Elliott-Larsen Civil Rights Act

Plaintiffs' second primary argument in their Proposed Amended Complaint is that Defendants DPS, BKBA, Wayne RESA, CFA, Evans, CFA board members, Mr. Evans, Martin, and Wigent are liable for violations of the Michigan Elliott-Larsen Civil Rights Act of 1976, MICH. COMP. LAWS § 37.2402 ("ELCRA"). ELCRA states that an educational

institution[9] may not:

> (a) Discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex.

Plaintiffs argue that BKBA, Wayne RESA, CFA, and DPS discriminated against Plaintiff students by providing an education to pregnant and parenting female students of CFA that is grossly inferior to the education received by male and non-pregnant/parenting female students in the DPS and BKBA school districts.[10] However, DPS again argues that at the time the discriminating acts began at CFA, DPS was no longer involved with instituting and overseeing the school's educational programs, therefore it should be excused from any liability under ELCRA.

Defendants argue that Plaintiffs cannot bring claims under ELCRA because they fail to allege a *prima facie* case of discrimination. "A *prima facie* case of discrimination can be made by proving either intentional discrimination or disparate treatment." *Manning v. Hazel Park*, 202 Mich. App. 685, 697 (1994). To prove intentional discrimination, the plaintiff must show: (1) that she was a member of the affected class, (2) that she suffered an adverse action, (3) that she was otherwise qualified, and (4) that the adverse action occurred under

---

[9] MICH. COMP. LAWS § 37.2401 defines "educational institution" as:
[A] public or private institutional, or a separate school or department thereof, and includes an academy, college, elementary or secondary school, extension course, kindergarten, nursery, local school system, university, or a business, nursing, professional, secretarial, technical, or vocational school; and includes an agent of an educational institution.

[10] Other than their initial argument in their Amended Pleading that Defendants are liable under ELCRA, Plaintiffs do nothing to expand upon any support they might have in bringing such a claim, nor do they provide a Reply to counter any of the Defendants' arguments presented in the three Responses issued.

circumstances giving rise to an inference of unlawful discrimination. *Sniecinski v. Blue Cross and Blue Shield of Michigan*, 469 Mich. 124, 133 (2003). To prove disparate treatment, the plaintiff must show "that she was a member of a class entitled to protection under the act and that she was treated differently than persons of a different class for the same or similar conduct." *Reisman v. Regents of Wayne State Univ.*, 188 Mich. App. 526, 538 (1991). Contrary to Defendants argument that Plaintiffs fail to allege that they suffered adverse action under circumstances giving rise to an inference of unlawful discrimination, the facts laid out in Plaintiffs' Amended Pleading clearly establish such circumstances. Unlike students at DPS and other BKBA schools, those at CFA were not given certified teachers, access to classes necessary for graduation, or even formal classroom hours. Instead CFA students were required to independently create and complete their own curriculum, answer their own questions, and qualify themselves as attending a juvenile disciplinary school. The circumstances at CFA caused irreparable harm through the loss of access to graduation and class credits, which detrimentally injured many students' plans for the future and opportunity for college admittance. Additionally, Defendants discriminating acts caused emotional pain, suffering and distress.

Defendants argue that they are immune from any liability under MICH. COMP. LAWS § 380.503(8), which governs the authorization of a public school academy under the Revised School Code and provides that:

> A public school academy and its incorporators board members, officers, employees, and volunteers have governmental immunity as provided in section 7 of 1963 PA 170, MCL 691.1407[11]. An authorizing body and its board members, officers, and

---

[11] "[A] governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function..."

> employees are immune from civil liability, both personally and professionally for an act or omission in authorizing a public school academy if the authorizing body or the person acted or reasonably believed he or she acted within the authorizing body's or the person's scope of authority.

Defendants' argument plausibly relieves the CFA board members, Mr. Evans, Martin, and Wigent from liability for operating in their official capacity. However, "[g]overnmental [i]mmunity is not a defense to a claim brought under the Civil Rights Act." *Manning*, 202 Mich. App. at 685. While the Defense relies on the Governmental Tort Liability Act ("GTLA"), MICH. COMP. LAWS § 691.1401 *et seq*, which provides that "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function," MICH. COMP. LAWS § 691.1407, caselaw has established that "[t]here are other areas outside the GTLA where the Legislature has allowed specific actions against the government to stand, such as the Civil Rights Act." *Mack v. City of Detroit*, 467 Mich. 186, 195 (2002).

## V. RECOMMENDATION

For the above stated reasons, the Court will GRANT IN PART and DENY IN PART Plaintiffs' Motion to Amend Complaint and Join Parties [# 24]. Plaintiffs' may file an amended complaint raising Title IX and the ELCRA claims against BKBA, Wayne RESA, CFA, and Evans.

It Is Further Ordered that to the extent Plaintiffs seek to bring new Title IX and ELCRA claims against DPS, CFA's board members, Mr. Evans, Martin, and Wigent, Plaintiffs' Motion is DENIED.

It Is Further Ordered that to the extent Plaintiffs seek to add Marshall and Bastianelli

---

MICH. COMP. LAWS § 691.1407.

as Defendants, Plaintiffs' Motion is DENIED.

It Is Further Ordered that Plaintiff has seven days from the date of this order to file an amended complaint in conformity with this opinion.

SO ORDERED.

Dated: <u>October 29, 2013</u>         <u>/s/GershwinA Drain         </u>
                                      GERSHWIN A. DRAIN
                                      UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
<u>October 29, 2013</u>, by electronic and/or ordinary mail.
<u>/s/ Tanya Bankston </u>
Deputy Clerk